UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES A. SWENSON, JR., | ) | CIV. 12-04182-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER AFFIRMING THE DECISION |
| | ) | OF THE COMMISSIONER |
| CAROLYN W. COLVIN, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, James A. Swenson, Jr., moves for reversal of the Commissioner of Social Security's decision denying his application for disability insurance benefits under Title II of the Social Security Act (SSA) and for supplemental security income under Title XVI of the SSA. The Commissioner opposes the motion. The court affirms.

**PROCEDURAL HISTORY**

On June 4, 2008, James A. Swenson, Jr. filed a claim for disability insurance benefits under Title II of the SSA and a claim for supplemental security income under Title XVI of the SSA. AR 183- 194.[1] Swenson alleged a disability onset date of September 2, 2000. AR 183. The Social Security Administration initially denied this claim on July 22, 2008, and again upon

_____

[1] All citations to "AR" refer to the appropriate page of the administrative record.

reconsideration on January 13, 2009. AR 91- 92, 96, 100. On March 25, 2009, Swenson requested a hearing before an Administrative Law Judge (ALJ). AR 111-12. On September 30, 2010, the ALJ held a hearing on Swenson's claims. AR 46-79. On October 12, 2010, the ALJ determined that Swenson was not disabled at any time between September 2, 2000, and October 12, 2010 (the date of the ALJ decision). AR 18-26.

On June 14, 2012, the Appeals Council denied Swenson's timely request for review. AR 6-10. Thus, the unfavorable October 12, 2010, decision became the Commissioner's final decision. AR 8. On October 23, 2012, Swenson filed a timely civil action in this court, alleging that the ALJ's decision was erroneous. Docket 1.

## FACTS

Born on May 20, 1958, Swenson was 42 years old on his alleged disability onset date, September 2, 2000, and on his date last insured, September 30, 2000. AR 18, 183. Swenson graduated from high school in 1976 and obtained some college education thereafter. AR 48-49, 232, 386. He did not attend special education classes. AR 232.

Between 1976 and 2000, Swenson worked in framing and closing houses, commercial construction, as a veterinarian assistant for his father, and as a concrete mason. AR 49-50, 265. Swenson continued to work even after his alleged disability onset date as an assistant for his father until some time in

2

2001 when his father passed away. AR 49, 206, 265. After his father died, Swenson worked "some side cast jobs," such as "helping out a couple of farmers doing some odds and ends." AR 52-53, 278. He reported, however, that he has stopped these side jobs "for quite a while now." AR 52.[2]

Even before the onset of his alleged disability, Swenson was unable to generate a significant income, with $13,610 in 1982 being his highest year's income. AR 199-210. Swenson had no recorded income for the years 1993, 1994, 1995, 1996, and 2000, and in 2001, Swenson only earned $999. AR 199.

Swenson lives alone and completes his own chores. AR 49-53, 65, 247, 410. Swenson frequently goes on walks and visits friends. AR 67, 250, 411. Shortly before the ALJ's review, Swenson lifted and carried the "lighter" boxes to help his friend move. AR 60-61.

## I.   Depression/Anxiety

Swenson has experienced symptoms of anxiety since grade school and has struggled with depression since 1980. AR 384, 394. Specifically, he has had four major depressive episodes (occurring in 1980, 1983, 2001, and 2008), and has daily panic attacks. AR 394.

Swenson has seen several medical professionals in regards to his mental health. Dr. Michael Lastine, Swenson's primary care physician, opined that

---

[2] Dr. Lastine's March 7, 2007, report is the latest record mentioning Swenson working an "odd job." AR 271.

3

Swenson's anxiety neurosis and agoraphobia[3] were so severe, "that he is disabled from that alone," and could not go out in public. AR 506. Tony Sorensen, Psy.D., LP, Swenson's primary therapist at Southwestern Medical Center, diagnosed Swenson with major depressive disorder,[4] panic disorder,[5] agoraphobia, and alcohol dependence. Sorensen gave Swenson a global assessment of functioning (GAF) rating of 47,[6] but noted that his overall mental condition was "fair-good." AR 384-92, 482-91, 500-502. Dr. Jim Horgan, of Southwestern Mental Health Center, diagnosed Swenson as having

---

[3]Agoraphobia is the "fear of leaving home, of being alone, and of being in a situation where one cannot suddenly leave or obtain help . . . the agoraphobic may go to almost any lengths to avoid leaving home." WebMD, http://www.webmd.com/heartburn-gerd/achalasia (last visited July 9, 2014). Swenson reports withdrawing from others and cancelling appointments to avoid going out in public. AR 411.

[4] Major Depressive Disorder, also known as Clinical Depression, is "marked by a depressed mood most of the day, particularly in the morning, and a loss of interest in normal activities and relationships." WebMD, http://www.webmd.com/heartburn-gerd/achalasia (last visited July 9, 2014).

[5] A Panic Disorder is marked by "sudden attacks of fear and nervousness, as well as physical symptoms such as sweating and a racing heart." WebMD, http://www.webmd.com/heartburn-gerd/achalasia (last visited July 9, 2014). Swenson reports daily panic attacks. AR 394.

[6] The global assessment of functioning (GAF) ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness rating from zero to 100. A rating of 41-51 indicates serious symptoms or serious impairments. A 51-60 rating indicates moderate symptoms and a rating of 61-70 indicates mild symptoms. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32-34 (Text Rev. 4th ed. 2000).

Somatoform Disorder,[7] and gave Swenson a GAF rating of 60. AR 413.

Additionally, Dr. Horgan opined that his anxiety was insignificant and

medication "may help [Swenson] enough to function well in some limited work

environments" and that ". . . given the right environment, [Dr. Horgan thought

Swenson] could accomplish some more tasks and be more productive." AR 413.

Lastly, Dr. Viel, with Pipestone County Medical Center, reported that Swenson

was exhibiting symptoms "consistent with somebody with bipolar disorder." AR

508. Swenson, however, has not received medication for bipolar disorder. AR

266, 508.

As of his hearing, Swenson was taking Amitiptyline and Lorazepam for

his anxiety and depression. AR 266; AR 63. Swenson testified that he thought

his medications were keeping him "fairly stable." AR 64. Swenson also sees

Dr. Sorensen irregularly for therapy. AR 63.

## II.    Cervical Degenerative Disc Disease

Swenson has experienced issues with Cervical Degenerative Disc

Disease[8] since approximately September 2, 2000, stating that his back has

---

[7] Somatoform Disorder is a mental disorder that causes patients to experience symptoms of physical pain or illness that cannot be explained by a general medical condition.

[8] Cervical Degenerative Disc Disease, frequently developing in patients that smoke and/or have done a lot of heavy lifting, occurs when the discs in the spine that work as shock absorbers degenerate, causing pain. WebMD, http://www.webmd.com/heartburn-gerd/achalasia (last visited July 9, 2014).

5

"[j]ust worn out through the years." AR 53. Reported symptoms include lower back pain, tightness in muscles, weakness in left arm, aching, tingling, and numbness in neck. AR 399-403. Notes from Pipestone Family Chiropractic report that Swenson's condition is "chronic and persistent." AR 400.

On September 22, 2000, Dr. Lastine x-rayed Swenson and observed mild narrowing at C5-6. AR 291. On February 28, 2001, Dr. Lastine again x-rayed Swenson's lower back and observed evidence of early disc disease. AR 289. Dr. Lastine noted that Swenson's symptoms did not match up with his MRI results. AR 286. An MRI report on February 21, 2003, showed "moderate disc narrowing and mild disc desiccation with mild diffuse disc bulging" of C5-6. AR 328. All other discs appeared "unremarkable." AR 328. MRI results on March 26, 2007, also reported evidence of cervical disc disease. AR 295. Dr. Lastine opined on September 10, 2010, however, that Swenson could not use his arms or legs and that between the physical problems from cervical degenerative disc disease and his psychological problems, Swenson was "100% permanently disabled." AR 506. On August 24, 2010, Dr. Viel reported that Swenson's disc degeneration was "anatomically mild." AR 508.

For treatment, Swenson goes to the chiropractor. AR 399-403, 439-453. Swenson also undergoes physical therapy. AR 54. Swenson's medications for his back include: meloxicam, baclofen, gabapentin, acetaminophen, and ibroprofen. AR 266. Swenson reported that the physical therapy, medicine, and

6

going to the chiropractor acted as a "band aid," and only temporarily alleviated

his pain. AR 54. Dr. Lastine reported that the physical therapy seemed to be

improving or stabilizing Swenson's condition. AR 282, 286, 465-67.


## ALJ DECISION

On October 12, 2010, the ALJ issued a decision denying Swenson's claim

for Title II disability benefits and for supplemental security income under Title

XVI of the SSA. AR 183-194. The ALJ analyzed Swenson's claim utilizing a five-

step sequential evaluation procedure.[9] AR 19-20. At step one, the ALJ

determined that Swenson had not engaged in substantial gainful activity since

---

[9] 20 C.F.R. § 404.1520(a)(4)(i)-(v) provides that "(i) [a]t the first step, we
consider your work activity, if any. If you are doing substantial gainful activity,
we will find that you are not disabled. . . . (ii) At the second step, we consider
the medical severity of your impairment(s). If you do not have a severe
medically determinable physical or mental impairment that meets the duration
requirement of § 404.1509, or a combination of impairments that is severe and
meets the duration requirement, we will find that you are not disabled. . . .
(iii) At the third step, we also consider the medical severity of your
impairment(s). If you have an impairment(s) that meets or equals one of our
listings in appendix 1 of [subpart P of part 404 of this chapter] and meets the
duration requirement, we will find that you are disabled. . . . (iv) At the fourth
step, we consider our assessment of your residual functional capacity and your
past relevant work. If you can still do your past relevant work, we will find that
you are not disabled. . . . (v) At the fifth and last step, we consider our
assessment of your residual functional capacity and your age, education, and
work experience to see if you can make an adjustment to other work. If you can
make an adjustment to other work, we will find that you are not disabled. If
you cannot make an adjustment to other work, we will find that you are
disabled."

September 2, 2000 (Swenson's alleged onset date). AR 20. Specifically, the ALJ

assessed that Swenson's work for his father as a veterinary assistant after the

onset of his alleged disability date did not rise to the level of substantial gainful

activity.

At step two, the ALJ determined that Swenson had medically-

determinable severe impairments of cervical degenerative disc disease and

depression/anxiety, non-severe impairments of gastric reflux, pulmonary

emphysema and abnormal liver functions, and that Swenson's history with

alcohol was immaterial. AR 20-21.

At step three, the ALJ determined that Swenson's impairments or

combination of impairments did not meet one of the listed impairments in 20

CFR part 404, Subpart P, Appendix 1.[10] AR 21-22. In finding Swenson's

impairments did not meet 20 C.F.R. part 404, subpart P, appendix 1, the ALJ

considered that the MRI findings do not reveal the requisite nerve root or spinal

cord compromise. The ALJ also concluded that Swenson's mental impairments

did not restrict his daily living. Swenson had no marked difficulties in

maintaining social functioning, maintaining concentration, persistence, or

---

[10] 20 C.F.R. part 404, Subpart P, Appendix 1 lists the following impairments: Growth, musculoskeletal system, special senses and speech, respiratory system, cardiovascular system, digestive system, genitourinary, hematological disorders, skin disorders, endocrine system, impairments that affect multiple body systems, neurological, mental disorders, malignant neoplastic diseases, immune system disorders. 20 C.F.R. § 404(subpart p)(appendix1)(i)-(xvi).

pace, or repeated episodes of decompensation. While Swenson has mild-moderate difficulties with regards to most of these areas, he lived alone, completed his household chores, exercised, visited friends, completed small duties for friends and family, and attended family functions.

The ALJ further determined that Swenson has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). AR 22-24. The ALJ based his RFC determination on Dr. Lastine's examination revealing Swenson had normal upper extremity range of motion; medical opinions noting that Swenson's cervical degenerative disc disease was anatomically mild and that chiropractic treatment was helping; and Dr. Sorensen's evaluation of Swenson's ability to work. The ALJ also considered Swenson's testimony that he does his own chores, visits friends, and has worked on the side.

At step four, the ALJ determined that Swenson is unable to perform any past relevant work because of the physical demand of cement and veterinarian work. AR 24.

At step five, the ALJ determined that considering Swenson's age, education, and RFC, Swenson can perform a significant number of jobs that exist in the national economy such as working as a utility worker, assembler of small products, or machine cutter. AR 24-25, 77.

9

Based on these findings, the ALJ determined that Swenson was "not disabled under 216(i) and 223(d) of the Social Security Act." AR 25.

## STANDARD OF REVIEW

An ALJ's decision must be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (reasoning that substantial evidence means "more than a mere scintilla"). In determining whether substantial evidence supports the ALJ's decision, the court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010) (internal citation omitted). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

In determining whether the Commissioner's decision is supported by substantial evidence, the court reviews the entire administrative record and considers six factors: (1) the ALJ's credibility determinations; (2) the claimant's

vocational factors; (3) medical evidence from treating and consulting physicians; (4) the claimant's subjective complaints relating to activities and impairments; (5) any third-party corroboration of claimant's impairments; and (6) a vocational expert's testimony based on proper hypothetical questions setting forth the claimant's impairment(s). *Stewart v. Sec'y of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commission's construction of the Social Security Act. *See Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992).

## DISCUSSION

Swenson argues that the ALJ erred in determining his RFC by discounting his treating physician's opinions and giving greater weight to the opinions of non-examining doctors. Swenson further disputes the ALJ's finding that there were a significant number of available jobs in the national economy.

## I.      Introducing New Evidence

In his complaint (Docket 1) and memorandum in opposition to dismissal (Docket 11), Swenson asked the court to consider the following new evidence in deciding his appeal: a medical opinion by Dr. Lastine on March 28, 2012, stating that Swenson "will not be able to perform any employment in the foreseeable future" (Docket 1-1); six records from Southwestern Mental Health Center dated from June 22, 2011–May 21, 2012, all consistently stating that Swenson had psychological, physical, interpersonal, daily life and occupational impairments (Docket 1-2); and a February 11, 2013, opinion by Dr. Lastine stating that Swenson has been "disabled" since 2007 (Docket 11-1). Swenson asserted that the new evidence was the basis of his appeal and, in fact, admitted that the ALJ's decision was correct based on the evidence presented at the hearing. Docket 10. His brief, however, does not address or make any arguments with regard to any of the new evidence above. Docket 19. Swenson has waived any argument regarding the new evidence by failing to address the new evidence on appeal. *See Cubillos v. Holder*, 565 F.3d 1054, 1058 (8th Cir. 2009).

Even if the argument is not waived, the court only considers new evidence if it is material and there is good cause for not bringing the evidence forward earlier. *See* 42 U.S.C. § 405(g). Evidence is not material unless it is "non-cumulative, relevant, and probative of the claimant's condition *for the time period for which benefits were denied.*" *Hepp v. Astrue*, 511 F.3d 798, 808 (8th

Cir. 2008) (emphasis added). And a party does not show good cause based on a report that was made after an ALJ hearing when the mental deficiency that is the subject of the new report existed before the ALJ hearing. *Mouser v. Astrue*, 545 F.3d 634, 637 (8th Cir. 2008).

The new evidence here is not relevant to Swenson's condition prior to or at the time of the ALJ's decision because it covers a time period *after* Swenson's benefits were denied. Docket 1-1; Docket 1-2; Docket 11-1. Additionally, Swenson's mental condition, the subject of these reports, existed *before* the ALJ hearing. Accordingly, the court refuses to consider the new evidence.

## II.   RFC Determination

Swenson argues that the RFC determination was erroneous because the ALJ improperly discounted Dr. Lastine's opinion. Swenson specifically argues that Dr. Lastine's opinion should be awarded controlling weight because Dr. Lastine was his primary examining physician and Dr. Lastine's opinions on the severity of Swenson's condition were consistent.

A treating physician's opinion on the nature and severity of the claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20

13

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). "A treating physician's opinion 'do[es] not automatically control, since the record must be evaluated as a whole.' " *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (quoting *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995)). An ALJ may "discount or even disregard the opinion of a treating physician where . . . a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (citations omitted). The ALJ must always give good reasons for the weight afforded to a treating physician's evaluation. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

In the present case, the ALJ did not give Dr. Lastine's opinions concerning Swenson's occupational limitations controlling weight because the opinions were conclusory, inconsistent with substantial evidence in the record, and outside the doctor's area of expertise. AR 22-24. Dr. Lastine stated that Swenson was "100% permanently disabled," that he could not go into public because of his anxiety, and that he could not use his arms or legs for any length of time. AR 506. The ALJ determined that Dr. Lastine's opinions lacked foundation because they failed to "enumerate the physical findings relied on." AR 23. Moreover, the ALJ noted that Dr. Lastine's opinions were inconsistent with each other and that there was no substantial support in the record to validate Dr. Lastine's opinion that Swenson was severely disabled. *Id.* Further,

14

the ALJ stated that Dr. Lastine's opinion "appears to rest at least in part on an assessment of claimant's psychological impairment, which is outside the [sic] Dr. Lastine's area of expertise." *Id.*

The ALJ was correct in finding that there are some inconsistencies in Dr. Lastine's opinions. Inconsistent with his September 10, 2010, opinion that Swenson's condition had "progressively worsened over the last 10 to 15 years," AR 506, is Dr. Lastine's report in 2002 that the pain "will come and go," that therapy had been successful, *id.*, that there were "marked improvements in [Swenson's] back and neck," AR 286, his 2003 report, that the patient's cervical disc disease had "somewhat progressed," AR 282, and his 2009 report, that his condition was "stable" and there were "no major change[s] from before," AR 465-67. Furthermore, Dr. Lastine reported that the patient's symptoms do not match up with the MRI results. AR 286. Inconsistent with Dr. Lastine's opinion that Swenson is unable to do any kind of work because of his arms and legs, AR 506, Dr. Lastine stated that, "as far as work goes, he can be the best judge of that himself, but no rush on that . . . ." AR 289. Additionally, the physical examination showed Swenson's condition was normal. AR 281. Therefore, Dr. Lastine's opinions contain internal inconsistencies and are somewhat conclusory.

Beyond that, Dr. Lastine's opinions are inconsistent with other evidence in the record. MRI results show Swenson's condition was mild or

15

"unremarkable." AR 328. Dr. Viel reported that Swenson's problems were "anatomically mild." AR 508. Additionally, Swenson is able to live alone, do his own chores, socialize, and had done veterinarian work and work on the side for farmers after his alleged onset date.[11] AR 49-53. Thus, Dr. Lastine's opinions about the severity of Swenson's physical condition are inconsistent and lack support in the record.

Turning specifically to Dr. Lastine's impressions of Swenson's mental health, the court "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

Dr. Lastine opined that Swenson's mental health was disabling. AR 506. Dr. Lastine, however, a primary care physician, is not a mental health specialist.[12] Dr. Sorensen, Psy.D., who is a licensed psychologist and

---

[11] Swenson argues that the ALJ should not have considered the following when determining his RFC: he lives alone, does his own chores, helped a friend move, and has worked for his father and for various farmers. While chores and "insignificant duties" are not in themselves indications that a person can engage in substantial gainful activity, such findings may indicate that an individual is capable of greater functioning than he/she alleges. *See* 20 C.F.R. § 404.1571. The ALJ properly considered chores and make-work to support MRI results reporting degeneration was mild, Dr. Viel's report that Swenson's back problems were "anatomically mild," and Dr. Lastine's reports stating that Swenson's physical was normal. AR 281, 328, 508.

[12] The following are mental health specialists: psychologists, psychiatrists, psychotherapists, psychoanalysts, and cognitive behavioral therapists. WebMD, http://www.webmd.com/heartburn-gerd/achalasia (last

Swenson's primary therapist, noted that Swenson's mental health may cause him to have poor attendance at work, but that Swenson's mental health was "fair-good" and would not preclude him from working. AR 500-02. Dr. Horgan, also a licensed psychologist, opined that "[t]here doesn't seem to be a significant amount of anxiety going on" and that he would be able to "function well in some limited work environments." AR 413. Because Swenson was also examined by mental health specialists, the ALJ did not err in giving more weight to both specialists' opinions. Both of these opinions substantially support the ALJ's determination of Swenson's RFC.

## III.    Job Availability

Swenson also challenges the ALJ's finding that there are available jobs for him in the national economy. Specifically, Swenson alleges that the ALJ gave no weight to the vocational expert's answers to the second and third hypothetical questions posed during the hearing. The vocational expert answered that there were no jobs available for persons who would be off task for 25 percent of the workday or who would need to take additional 15-minute breaks. AR 78.

The opinion of a vocational expert has no value where the hypothetical question posed did not have support in the record. *Brenner v. Schweiker*, 711

---

visited July 9, 2014).

F.2d 96, 99 (8th Cir. 1983). The hypothetical question must precisely set forth the claimant's condition or it cannot be used to assess job availability. *Id.*

Although the ALJ did not specifically address the vocational expert's answer that there were no jobs available for someone who would be off task 25 percent of the day or need additional 15-minute breaks, the record does not show that Swenson would need multiple breaks or would be off task for 25 percent of the day. Rather, both of Swenson's examining mental health specialists suggested otherwise. Dr. Sorensen noted that Swenson had satisfactory ability to maintain attention and an "unlimited or very good" ability to "perform at a consistent pace without an unreasonable number and length of rest periods." AR 502. Dr. Sorensen also noted that Swenson could satisfactorily maintain concentration while working, work alongside others, respond to changes in a routine work setting, carry out simple instructions, and deal with normal work stress. *Id.* Dr. Horgan similarly determined that with the right medication, Swenson could perform certain jobs well. AR 413. The second and third hypothetical questions, therefore, did not accurately set forth Swenson's condition.

On the other hand, only the first hypothetical question asked by the ALJ (asking whether there were jobs available for someone of Swenson's age and background where posturals are occasional, one does not need to work with the public, and there is limited co-worker interaction) fully and accurately

18

addressed Swenson's condition. The vocational expert testified that there were numerous jobs for individuals who could only do light work, could not work with the public, and needed limited co-worker interaction. AR 77. Substantial evidence in the record shows that these limitations accurately reflect Swenson's condition. Thus, the ALJ appropriately considered the part of the vocational expert's testimony that was supported by the record. Therefore, the court will not disturb the ALJ's finding regarding job availability.

## CONCLUSION

Following a careful review of the record, substantial evidence supports the ALJ's decision denying benefits. The ALJ did not err in giving Swenson's treating physician's opinion less weight. Additionally, substantial evidence supports the ALJ's determination that there are a substantial number of jobs available for Swenson in the national economy. Therefore, substantial evidence supports the ALJ's determination that Swenson was not disabled during the applicable date range. Accordingly, it is

ORDERED that the motion to reverse the decision of the Commissioner is denied, and the decision of the Commissioner is affirmed.

Dated July 18, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

19